COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Annunziata and Lemons
Argued at Alexandria, Virginia


DAVID T. RASMUSSEN
                                        OPINION BY
v.    Record No. 1239-98-4      JUDGE ROSEMARIE ANNUNZIATA
                                     DECEMBER 28, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                 Arthur B. Vieregg, Jr., Judge

          David A. Oblon (Juliet D. Hiznay; Albo &
          Oblon, LLP, on briefs), for appellant.

          H. Elizabeth Shaffer, Assistant Attorney
          General (Mark L. Earley, Attorney General,
          on brief), for appellee.


     David T. Rasmussen appeals his conviction for drunk driving

(third offense within ten years), contending that the result of

a breathalyzer test administered to him following his arrest was

improperly admitted at trial.  We find no error and affirm.

                              FACTS

     Upon review, we view the facts in the light most favorable

to the Commonwealth, the party prevailing below.  See Clifton v.

Commonwealth, 22 Va. App. 178, 180, 468 S.E.2d 155, 156 (1996)

(citing Higginbotham v. Commonwealth, 216 Va. 349, 352, 218

S.E.2d 534, 537 (1975)).  On August 3, 1997, Rasmussen was

driving a motorcycle at 74 miles-per-hour on Interstate 95 just

north of Route 617 in Fairfax, Virginia, in a zone limited to 55

miles-per-hour.  Trooper Josh Collins of the Virginia State Police stopped Rasmussen for speeding and detected the odor of alcohol on his breath.  Collins administered a series of field sobriety tests on Rasmussen, most of which he failed.  Collins then arrested Rasmussen for drunk driving (third offense within ten years), and advised him of the implied consent law, which states, in pertinent part:

> Any person . . . who operates a motor vehicle upon a highway . . . in this Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples of his blood, breath, or both blood and breath taken for a chemical test to determine the alcohol, drug, or both alcohol and drug content of his blood, if he is arrested for violation of § 18.2-266 or § 18.2-266.1 . . . .  Any person so arrested . . . shall submit to a breath test.

Code § 18.2-268.2(A)-(B).

After arresting Rasmussen, Collins took him to the Adult Detention Center, where a breathalyzer test was performed on Rasmussen using an Intoxilyzer 5000 machine ("I-5000").  The machine was operated by Frederick Smith, a certified breath test operator.  Smith later testified that the normal operation of the I-5000 involves having the arrestee breathe twice into the machine, giving two separate breath samples.  The machine prints the lower of the blood alcohol levels produced from the two breath samples on a Certificate of Blood Analysis ("Certificate").  It also transmits, via modem, the results

obtained from both samples to the state Department of Forensic Science in Richmond ("DFS"). The I-5000 determined Rasmussen's blood alcohol level to be .14%. Over Rasmussen's objection, the circuit court admitted into evidence the Certificate from the I-5000's analysis of Rasmussen's breath. His objection was based on Code §§ 18.2-268.2 and 18.2-268.9. By its order of June 11, 1998, the circuit court found Rasmussen guilty and sentenced him to twelve months in jail, with all but thirty days suspended for one year. The court also imposed a $500 fine and indefinitely suspended Rasmussen's driver's license.

<u>ANALYSIS</u>

Rasmussen relies upon the language of Code §§ 18.2-268.2 and 18.2-268.9 to argue that for each discrete breath sample taken for testing by a breathalyzer, the Commonwealth is required to give the arrestee the opportunity to view the results as they register on the machine. Code § 18.2-268.2(B) states, in pertinent part:

> The accused shall, prior to administration of the test, be advised by the person administering the test that he has the right to observe the process of analysis and to see the blood-alcohol reading on the equipment used to perform the breath test. If the equipment automatically produces a written printout of the breath test result, the printout, or a copy, shall be given to the accused.

Code § 18.2-268.9 reads, in pertinent part:

> Any individual conducting the breath test
> . . . shall issue a certificate which will
> indicate that . . . the accused was advised
> of his right to observe the process and see
> the blood alcohol reading on the equipment
> used to perform the breath test, the date
> and time the sample was taken from the
> accused, the sample's alcohol content, and
> the name of the person who examined the
> sample. . . .

Rasmussen contends that because the word "sample" is used recurrently in Code § 18.2-268.9, the legislature intended to assure the accused the right to observe the results of the blood-alcohol analysis for each and every breath sample taken. We disagree.

"The province of [statutory] construction lies wholly within the domain of ambiguity, and that which is plain needs no interpretation." Coleman v. Commonwealth, 27 Va. App. 768, 773, 501 S.E.2d 461, 463 (1998). "Words are ambiguous if they admit to being understood in more than one way . . . refer to two or more things simultaneously . . . are difficult to comprehend, of doubtful import, or lack clearness and definiteness." Id. (citations omitted). "'The plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow or strained construction.'" Gilliam v. Commonwealth, 21 Va. App. 519, 522-23, 465 S.E.2d 592, 594 (1996) (quoting Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992)). Legislative intent may also be gleaned by consulting other

- 4 -

statutes "using the same phraseology," id. at 523, 465 S.E.2d at 594, and "statutes which relate to the same subject matter should be read, construed and applied together . . . ." Alger v. Commonwealth, 19 Va. App. 252, 256, 450 S.E.2d 765, 767 (1994).

"'Where a statute is unambiguous, the plain meaning is to be accepted without resort to the rules of statutory interpretation.'" Frazier v. Commonwealth, Dept. of Social Servs., Division of Child Support Enf'ment, ex rel. Susan M. Sandridge, 27 Va. App. 131, 134, 497 S.E.2d 879, 880 (1998) (quoting Last v. Virginia State Bd. of Med., 14 Va. App. 906, 910, 421 S.E.2d 201, 205 (1992)). "When analyzing a statute, we must assume that 'the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.'" Frazier, 27 Va. App. at 135, 497 S.E.2d at 881 (quoting City of Virginia Beach v. ESG Enters., Inc., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (citation omitted)). "'"Courts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied."'" Frazier, 27 Va. App. at 135, 497 S.E.2d at 881 (quoting Barr v. Town & Country Properties, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (citation omitted)).

We find no ambiguity in the statutes cited by Rasmussen and construe the provisions according to their plain meaning. Each of the statutes refers to "breath test," "sample" and "blood alcohol reading" in the singular, and nothing in the statutes indicates an intention to give an accused the right to immediately view results of a breath test other than those actually printed out by the equipment used to conduct the test.

Rasmussen also contends that the term "process of analysis" necessarily encompasses the analysis of both samples taken and that, therefore, he was entitled to view the results obtained from each sample. However, when construed in the context of Code § 18.2-268.2 in its entirety, we find that the term "process of analysis" does not enlarge the scope of what Rasmussen is entitled to review. A distinction must be made between the right to see the steps undertaken to achieve a result ("the process of analysis," such as the taking of a sample), the operation of the testing machine and the print-out of the test results, and the right to see the result itself.[1] Here, the statute clearly limits an arrestee's right to "see[ing] the blood alcohol reading [printed] on the equipment used to perform the breath test." Code § 18.2-268.2(B).

---

[1] Process is defined as a "method, mode, or operation, whereby a result or effect is produced." Black's Law Dictionary 1205 (6th ed. 1990).

- 6 -

Based on our holding in <u>Breeden v. Commonwealth</u>, 15 Va. App. 148, 149, 421 S.E.2d 674, 675 (1992), Rasmussen further contends that the failure to provide him the opportunity to review the test result of the other sample deprived him of access to potentially exculpatory breathalyzer evidence. This argument also lacks merit.

The testimony of the breathalyzer operator at trial established that the machine was properly calibrated[2] and that it printed a test result reflecting the lower of the two sample readings. Thus, the only evidence not made immediately available to Rasmussen was evidence of an inculpatory nature.

As Rasmussen was afforded the opportunity to view the print-out of the blood-alcohol reading taken by the breathalyzer machine, the requirements of Code §§ 18.2-268.2 and 18.2-268.9 were met. For these reasons, we affirm the conviction.

<u>Affirmed</u>.

---

[2] By its requirement that the operator of a breathalyzer machine certify, <u>inter</u> <u>alia</u>, that the machine has been calibrated in conformity with the statute, Code § 18.2-268.9 assures an accused that the machine is operating as designed. In the case of the I-5000, the certification indicates that the machine accurately tested the two breath samples and reported the lower of the two sample analyses.