COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Humphreys and Retired Judge Kulp[*]
Argued at Richmond, Virginia


WILLIAM LEE KAUFFMAN

                                        MEMORANDUM OPINION[**] BY
v.   Record No. 1725-98-2            JUDGE JAMES W. BENTON, JR.
                                            JUNE 20, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
                      William R. Shelton, Judge

               David A. Oblon (Juliet D. Hiznay; Albo &
               Oblon, L.L.P., on briefs), for appellant.

               Steven A. Witmer, Assistant Attorney General
               (Mark L. Earley, Attorney General, on brief),
               for appellee.


     The trial judge convicted William Lee Kauffman of driving a

motor vehicle while under the influence of alcohol in violation of

Code § 18.2-266.  Kauffman contends he was denied the opportunity

to observe the process of analysis and see the blood-alcohol

reading as required by Code § 18.2-268.2(B).  Therefore, he argues

the trial judge erred in refusing to suppress the certificate of

analysis of his blood alcohol level.  For the reasons that follow,

we affirm the conviction.

---

[*] Retired Judge James E. Kulp took part in the consideration
of this case by designation pursuant to Code § 17.1-400,
recodifying Code § 17-116.01.

[**] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

On July 19, 1997, at 3:13 a.m., a police officer in the City of Colonial Heights saw a motor vehicle swerving numerous times outside the markers of the lane in which it was travelling.  He stopped the vehicle and requested a driver's license and vehicle registration from the driver, William Kauffman.  After the officer noticed that Kauffman's eyes were bloodshot and that Kauffman had a smell of alcohol about his person, he questioned Kauffman about his alcohol consumption.  Kauffman said he had drunk two or three glasses of wine and two to three beers, consuming the last drink about thirty minutes before the officer stopped him.  After Kauffman was unsuccessful in performing several dexterity tests, the officer arrested him.

At the police station, the officer advised Kauffman of his obligation to take a blood or breath test pursuant to Virginia's implied consent law.  When Kauffman elected to take a breath test, the officer tested the blood alcohol content of Kauffman's breath using the Intoxilyzer 5000 machine, Series 768VA.

Prior to trial, Kauffman moved to suppress the certificate of analysis of the blood alcohol test.  Kauffman argued that the certificate should be suppressed because he was not provided the opportunity to see either the test results of all breath samples or the entire analysis as required under Code §§ 18.2-268.2 and 18.2-269.9.

At the suppression hearing, Robert Masolf of the Division of Forensic Science testified that the Intoxilyzer 5000 takes an "air blank" to check the surrounding air, prior to testing a person's breath.  After that check, the machine runs a simulator sample with a wet bath simulator that must meet certain tolerances and then runs another "air blank" to clear the chamber.  When the person blows through the breath tube to the chamber, the machine analyzes the person's breath for alcohol and stores the results into memory.  The machine then runs another "air blank" to clear the chamber, waits two minutes, and then asks for another sample.  When the person breathes into the machine a second time, it calculates the alcohol content of the second sample and compares it with the alcohol content of the first sample.  If the two samples are within .02 of each other, the machine takes the lower of the two samples and presents it as the final result.  That result is displayed on the machine and printed on a certificate.

On a weekly basis, the Division of Forensic Science downloads the testing results from each machine via a modem connected to the Division's offices in Richmond and obtains readings of both comparison samples from each machine.  The Division then reviews the results of all tests conducted by each machine for quality control and to "troubleshoot" any operational problems.  Masolf testified that the accused may obtain the higher of the two samples by request from the Division.  After hearing this

-

evidence, the trial judge requested counsel to brief their arguments and took the motion under advisement.

At trial, Kauffman entered a plea of not guilty. The certificate of analysis, which indicated that Kauffman's blood alcohol content was .12 grams per 210 liters of breath, was admitted in evidence subject to the judge's ruling on the motion to suppress. Following the presentation of evidence, the trial judge stated that "if the certificate doesn't come in, I don't think the evidence is sufficient for me to find beyond a reasonable doubt that he was intoxicated, not from the evidence that I have." At a hearing held at the conclusion of the trial, the trial judge denied Kauffman's motion to suppress the certificate and convicted Kauffman of driving under the influence of alcohol. This appeal followed.

## II.

Code § 18.2-268.2(B) provides as follows:

> Any person so arrested for a violation of
> § 18.2-266(i) or (ii) or both, or
> § 18.2-266.1 or of a similar ordinance shall
> submit to a breath test. If the breath test
> is unavailable or the person is physically
> unable to submit to the breath test, a blood
> test shall be given. The accused shall,
> prior to administration of the test, be
> advised by the person administering the test
> that he has the right to observe the process
> of analysis and to see the blood-alcohol
> reading on the equipment used to perform the
> breath test. If the equipment automatically
> produces a written printout of the breath
> test result, the printout, or a copy, shall
> be given to the accused.

-

To implement this statute, Code § 18.2-268.9 provides, in pertinent part, that "[a]ny individual conducting a breath test under the provisions of [Code] § 18.2-268.2 shall issue a certificate which will indicate . . . that prior to administration of the test the accused was advised of his right to observe the process and see the blood alcohol reading on the equipment used to perform the breath test."  In addition, Code § 18.2-268.9 provides that the certificate is admissible "when attested by the individual conducting the breath test."

This appeal is controlled by our ruling in Rasmussen v. Commonwealth, 31 Va. App. 233, 522 S.E.2d 401 (1999).  In response to an identical claim, we ruled as follows:

> [Appellant] also contends that the term "process of analysis" necessarily encompasses the analysis of both samples taken and that, therefore, he was entitled to view the results obtained from each sample.  However, when construed in the context of Code § 18.2-268.2 in its entirety, we find that the term "process of analysis" does not enlarge the scope of what [appellant] is entitled to review.  A distinction must be made between the right to see the steps undertaken to achieve a result ("the process of analysis," such as the taking of a sample), the operation of the testing machine and the print-out of the test results, and the right to see the result itself.  Here, the statute clearly limits an arrestee's right to "see[ing] the blood alcohol reading [printed] on the equipment used to perform the breath test." Code § 18.2-268.2(B).
>
> Based on our holding in Breeden v. Commonwealth, 15 Va. App. 148, 149, 421 S.E.2d 674, 675 (1992), [appellant] further

-

contends that the failure to provide him the opportunity to review the test result of the other sample deprived him of access to potentially exculpatory breathalyzer evidence.  This argument also lacks merit.

The testimony of the breathalyzer operator at trial established that the machine was properly calibrated and that it printed a test result reflecting the lower of the two sample readings.  Thus, the only evidence not made immediately available to Rasmussen was evidence of an inculpatory nature.

As [appellant] was afforded the opportunity to view the print-out of the blood-alcohol reading taken by the breathalyzer machine, the requirements of Code §§ 18.2-268.2 and 18.2-268.9 were met.

Id. at 239-40, 522 S.E.2d at 404 (footnotes omitted).

For these reasons, we hold that the trial judge did not err in denying Kauffman's motion to suppress the certificate of analysis.  Accordingly, we affirm the judgment.

Affirmed.

-