COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Petty and Senior Judge Bumgardner

ANNE ELIZABETH SIRNEY

                                                    MEMORANDUM OPINION[*]
v.        Record No. 0754-07-4                           PER CURIAM
                                                    DECEMBER 27, 2007
RICHARD PAUL SIRNEY


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

(Maria T. Browne; Maria Celeste Moran; Davis, Wright &
Tremaine, LLP, on briefs), for appellant.

(Richard L. Downey, on brief), for appellee.


Anne Elizabeth Sirney, mother, appeals a decision of the trial court awarding sole legal

custody of the parties' four children to Richard Paul Sirney, father.  On appeal, mother argues the

trial court erred by:  (1) awarding sole legal custody to father where no evidence indicated mother

was unable or unwilling to participate in decision-making regarding the children; (2) awarding sole

legal custody to father where father was responsible for the breakdown in communications between

the parties; (3) considering factors beyond mother's control in its decision; and (4) ordering a

restriction on overnight visitation.  Mother also contends that the trial court's overnight visitation

restriction violates her equal protection and due process rights.  Upon reviewing the record and

briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we summarily

affirm the decision of the trial court.  See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Background

The parties were married in 1989 and divorced in 2006. The parties had four children during the marriage. In August 2003, mother left the marriage and took the children to Oregon where they lived until father brought the children back to Virginia in October 2003. Pursuant to an order entered on December 3, 2004, the parties shared joint legal custody of the children, with father having primary physical custody and mother having visitation rights. Since 2003, mother has resided in Oregon, where she now resides with her female life partner.

In July 2006, father filed a petition to modify custody and visitation, seeking sole custody of the children. The petition also sought to restrict the presence of mother's life partner when the children are visiting mother in Oregon. Mother filed a cross-petition seeking joint legal custody and primary physical custody of the children.

The trial court held a four-day hearing on the child custody matter. In addition to other evidence, the court heard *in camera* testimony from three of the four children concerning their preferences. The children expressed a desire to have more contact with mother, but are more comfortable living with father.

The trial court found there had been three material changes in circumstances warranting a change in the custody order. First, there had been a complete breakdown in communication between the parents which had led to an inability for them to co-parent the children. In addition, mother's relationship with the children had deteriorated significantly because she had not had visitation with the children in Oregon since the summer of 2005, and she had had limited communications with the children since October 2003. Last, the trial court indicated that mother's cohabitation with a person to whom she is not married was a change in circumstances.

At the conclusion of the hearing, the trial court thoroughly addressed the factors of Code § 20-124.3 concerning the best interests of the children, stating that it considered each factor in its

decision. The trial court found that the limited contact mother has had with the children over the past several years has had a detrimental impact on the children. Mother has not been involved in the daily activities of the children largely because she chooses to reside in Oregon. During one seven-week period in 2006 and for several other intervals, mother had no contact with her children. Father is "very bonded" with the children, and he has a "very healthy" relationship with the children. Father is "deeply involved" in every aspect of the children's lives and has established a well-functioning household and a stable, consistent environment for the children.

The trial court found that father's hostility toward mother, often expressed in emails to mother, had undermined and interfered with mother's ability to have contact with the children, causing her to fear that she may have inadvertent contact with father. However, the trial court also found that mother had demonstrated a lack of willingness to maintain a close and continuing relationship with her children by choosing to live in Oregon and not exercising her visitation rights with her children over the past two years. The trial court stated that mother failed to put her children first and this fact was "of enormous significance" to the trial court in its decision.

The trial court emphasized that this custody case was "not at all" about the fact that mother is now in a lesbian relationship. The trial court declared that mother's current homosexual relationship "has not been the focus of my determination." Rather, the trial court stated that the significance of mother's relationship to the trial court's decision in the case was based on the reaction of the children to mother's relationship. The two oldest children expressed to the trial court "varying degrees of discomfort" and awkwardness with mother's relationship with her life partner. One child stated she would rather see her mother "alone."

The trial court awarded father sole legal custody of the children because the parents' actions during the past two years had indicated that they were currently unable to co-parent the children. The court ordered that father must attempt in good faith to consult with mother as to all major

decisions in the lives of the children. The trial court further awarded primary physical custody to father and visitation rights to mother because the children are firmly rooted in Virginia. The trial court ordered that there shall be "no overnight stays by a person to whom [mother] is not married with whom she is involved in a romantic, sexual relationship while the children are visiting" mother. The court elaborated that this condition applied to both male and female persons with whom mother is involved in a romantic, sexual relationship. In addition, the court ordered that mother could introduce the children to her friends or involve her friends in family activities with the children, but she had to "keep paramount the children's comfort level."

## Analysis

### I. Custody

We view the evidence in the light most favorable to father as the party prevailing below. Wright v. Wright, 38 Va. App. 394, 398, 564 S.E.2d 702, 704 (2002). We will not substitute our judgment for that of the trial court unless we find that the judgment was plainly wrong or without evidence to support it. Simmons v. Simmons, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1986).

"In issues of child custody, 'the court's paramount concern is always the best interests of the child.'" Vissicchio v. Vissicchio, 27 Va. App. 240, 246, 498 S.E.2d 425, 428 (1998) (quoting Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990)). "Code § 20-124.3 specifies the factors a court 'shall consider' in determining the 'best interests of a child for . . . custody or visitation.'" Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999). "'[T]rial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Farley, 9 Va. App. at 328, 387 S.E.2d at 795; see Yopp v. Hodges, 43 Va. App. 427, 439, 598 S.E.2d 760, 766 (2004) ("We afford great deference to the trial court's determination of what is in the best interests of the child."). "'We will not disturb the trial court's decision where it is based on an *ore tenus* hearing, unless it is "plainly wrong or without evidence in the record to

- 4 -

support it.'"'" Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 795 (1997) (citations omitted).

Mother argues the trial court erred by awarding sole legal custody to father because no evidence demonstrated that mother "could not or would not participate in the decision-making" concerning the children. This argument is without merit and mischaracterizes the trial court's ruling. The trial court did not find that mother could not or would not participate in the decision-making concerning the children. Rather, the trial court found that the evidence showed the parents were currently unable to co-parent the children because of the complete communication breakdown between the parents. In addition, after awarding father sole legal custody, the trial court ordered that father shall attempt to consult with mother on all major decisions in the lives of the children.

Mother contends the trial court abused its discretion in making the custody award where the evidence showed that father was responsible for the communication breakdown between the parents. While the trial court recognized that father's hostility toward mother sometimes interfered with mother's ability to maintain contact with the children, the trial court also specifically stated that it was a "two-way street" and that mother had also expressed anger and hostility toward father. A review of the email correspondence between the parents supports the conclusion that both parties were responsible for the lack of effective communications. Therefore, this argument is without merit.

Mother argues the trial court erred by basing its decision on factors that were outside of her control or were caused by father, such as her failure to exercise visitation rights from the summer of 2005 until September 2006. Mother contends father was predominantly responsible for her failure to see the children in the summer of 2006 and the trial court did not factor father's conduct into its decision.

In its discussion of Code § 20-124.3(6), the trial court specifically referenced the fact that father denied mother summer visitation in 2006. The trial court also referenced a five-week period in 2005 where father interfered with mother's ability to telephone the children. Therefore, the trial court considered father's conduct as it affected mother's relationship with the children. On the other hand, evidence was also presented from which the trial court could conclude that, in other instances, mother willingly chose to limit her contact and communication with the children.

The record shows the trial court carefully weighed all the factors set out in Code § 20-124.3 in making the custody decision. The trial court is not required "'to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Kane v. Szymczak, 41 Va. App. 365, 373, 585 S.E.2d 349, 353 (2003) (quoting Sullivan v. Knick, 38 Va. App. 773, 783, 568 S.E.2d 430, 435 (2002)). As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal. See Alphin v. Alphin, 15 Va. App. 395, 405, 424 S.E.2d 572, 578 (1992).

The trial court's decision was based on a proper consideration of the evidence and the factors found in Code § 20-124.3, and the evidence supported the conclusion reached.

## II. Visitation

Mother argues the trial court erred by ordering the limitation on overnight visitors at her residence when the children are visiting mother.

A trial court's decisions on visitation matters are ones within judicial discretion, where the child's welfare is the overriding consideration. Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 11 (1986). In imposing visitation restrictions, a trial court may consider "what effect a nonmarital relationship by a parent has on the child." Brown v. Brown, 218 Va. 196, 199, 237 S.E.2d 89, 91 (1977); see also Carrico v. Blevins, 12 Va. App. 47, 50, 402 S.E.2d 235, 237 (1991)

(upholding the restriction that the child could not be kept overnight where the mother and her lover lived together).

Two of the children expressed a level of discomfort and awkwardness about being in the presence of mother's life partner. The trial court explicitly ruled that there was no complete prohibition on any contact between the children and mother's life partner and it ordered that mother must keep "paramount" the comfort level of the children when in the presence of her life partner. However, based on concerns expressed by two of the children, the trial court prohibited overnight visits by any person to whom mother is not married and with whom she is involved in a sexual relationship. "[T]he protection of children from harm, whether moral, emotional, mental, or physical, is a valid and compelling state interest." Knox v. Lynchburg Div. of Soc. Servs., 223 Va. 213, 223, 288 S.E.2d 399, 404 (1982).

Furthermore, nothing in the trial court's ruling suggests that the court based its decision on its own moral views. Rather, evidence in the record supports the trial court's decision. In addition, whether to accept the testimony of the expert witness was within the purview of the trial court. See Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*). In view of the circumstances of this case, which did not mandate that the trial court completely bar mother's companion from the children's presence, we hold that the trial court did not abuse its discretion in imposing visitation restrictions.

Mother argues that the overnight visitation restriction infringes on her equal protection rights because it imposes a restriction based upon her status as a homosexual. She also contends the overnight visitation restriction violates her due process right to make decisions about her private conduct, disrupts her life, and forces her to choose between her children and her life partner.

The central mandate of the equal protection guarantee is that "the sovereign may not draw distinctions between individuals based solely on differences that are irrelevant to a

- 7 -

legitimate governmental objective." Lehr v. Robertson, 463 U.S. 248, 265 (1983). As a general rule, when a party claims a due process violation, courts "require a showing of identifiable prejudice" to that party. Estes v. Texas, 381 U.S. 532, 542 (1965). To establish a claim for violation of due process, mother must show that the procedure she complains of deprived her of "a liberty or property interest." Jackson v. W., 14 Va. App. 391, 406, 419 S.E.2d 385, 393 (1992).

The trial court's overnight visitation restriction did not impose a limitation based upon mother's homosexual relationship and it did not restrict or deprive mother of a liberty interest. Rather, the trial court's visitation restriction was gender neutral, applying to both male and female overnight guests, thereby applying equally to both heterosexual and homosexual relationships. Furthermore, the trial court specifically stated that the focus of its analysis of the case was not mother's homosexual relationship, but the conduct and relationship of each parent with the children and the best interests of the children. Indeed, the trial court went to great lengths to discuss the factors of Code § 20-124.3 in its analysis. In addition, the trial court emphasized that mother's homosexual relationship was significant to the trial court only in consideration of how the children have reacted to the relationship. Consequently, we reject mother's claims that she was discriminated against on an impermissible basis under the Equal Protection Clause of the Fourteenth Amendment or that she was deprived of a liberty interest by the overnight visitation restriction.

Mother's argument that the trial court would have had no grounds to impose the overnight visitation restriction if she was married to her current life partner in a marriage that Virginia would recognize as legal poses a hypothetical situation. "We need not address this

argument since it posits a wholly hypothetical situation." <u>Pryor v. Commonwealth</u>, 48 Va. App. 1, 7, 628 S.E.2d 47, 50 (2006).

Accordingly, we affirm the trial court's judgment.

<u>Affirmed.</u>